UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NORTH AMERICAN SPECIALTY INS. CO., | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 09-11122-LTS |
| MPF CORP. and MICHAEL P. FEDERICO, | ) ) ) ) | |
| Defendants. | ) ) | |

ORDER AND MEMORANDUM ON
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

December 29, 2010

SOROKIN, M.J.

The Plaintiff, North American Specialty Insurance Company (NAS) moves for judgment pursuant to Fed. R. Civ. P. 56, asserting that there are no genuine disputes of material fact, and that it is entitled to judgment as a matter of law. Docket # 13. For the following reasons, its motion is ALLOWED.

I.  PROCEDURAL AND FACTUAL BACKGROUND

NAS is an Illinois corporation in the business of issuing performance and payment surety bonds to contractors in order to secure their performance on construction projects. Docket # 15

at ¶ 1.[1]  The Defendants are MPF, a Massachusetts corporation which at all relevant times was a commercial construction contractor on public water and sewer projects, and Michael Federico, a Massachusetts resident who is the president and sole shareholder of the Corporation. Docket # 18 at ¶¶ 1-2. On or about October 3, 2000, MPR and Federico executed an Agreement of Indemnity on behalf of NAS. Docket # 15 at ¶ 3. It provides that the Defendants/Indemnitors are required to:

> exonerate, indemnify and keep indemnified [NAS] from and against any and all liability for losses and/or expenses of whatsoever kind and nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which [NAS] may sustain and incur: (1) By reason of having executed or procured the execution of the bonds, (2) By reason of the failure of the indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.

Docket # 16-1 at 1; Docket # 15 at ¶ 4.

The Indemnity Agreement further provides that:

> [i]n the event of any payment by [NAS], the Indemnitors further agree that in any accounting between [NAS] and the Indemnitors, [NAS] shall be entitled to charge for any and all disbursements <u>made by it in good faith</u> in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, <u>whether or not such liability, necessity or expediency existed</u>; and that the vouchers or other evidence of any such payments made by [NAS] shall be prima facie evidence of the fact and amount of the liability to [NAS].

Docket # 16-1 at 1 (emphasis added); Docket # 15 at ¶ 5.

NAS issued payment and performance bonds on behalf of MPF. Docket # 16 at ¶ 7.

---

[1] The Court cites only to the movant's Rule 56.1 statement whenever a fact is undisputed by the non-moving party. When a fact is in dispute, the Court cites to the record evidence offered in support of the factual assertions of the Parties.

Thereafter, NAS received claims on those bonds. Docket # 15 at ¶ 7. The keeper of NAS' business records affirms that NAS "in good faith, investigated, defended and ultimately incurred damages in the form of loss payments to various claimants on the bonds issued by NAS on behalf of MPF." Docket # 16 at ¶¶ 9-13. The Defendants deny neither the fact that the various claims were made, nor that NAS resolved the claims by making payments to the claimants as detailed in the NAS employees' affidavit, but do deny (in their briefing) that NAS did so in good faith. Docket # 19 at ¶¶ 8-12. NAS claims losses in the form of payments to bond claimants in the amount of $166,350.21 as well as attorneys' fees and expenses in the amount of $13,437.44. Docket # 16 at 14-15. The Defendants have not reimbursed NAS for any of the losses or expenses. Docket # 15 at ¶ 16. The Defendants assert that they are entitled to set-offs on four of the bond claims paid by NAS, that one claimant provided defective materials, and that one claimant breached its contract with MPF and was therefore not entitled to the amounts claimed. Docket # 18 at ¶¶ 6-8.

NAS now moves for summary judgment asserting that the contract language is undisputed and unambiguous and that it acted in good faith. Docket # 14.

II. DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Rogan v. City of Boston</u>, 267 F.3d 24, 26 (1st Cir.2001)(citing Fed. R. Civ. P. 56(c)). Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set

3

forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir.1995)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Moreover, the Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir.1993). Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir.2009). "The test for summary judgment is steeped in reality. Although the remedy must be withheld if material facts are authentically disputed, there is a burden of production . . . summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation" Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

An indemnity provision is not to be read with any bias in favor of the indemnitor and against the indemnitee; rather, it is to be interpreted like any ordinary contract, with attention to language, background, and purpose. Speers v. H.P. Hood, Inc., 22 Mass.App.Ct. 598, 600 (1986). Such agreements "are to be fairly and reasonably construed to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished." Massachusetts Port Authority v. Johnson Controls, Inc., 54 Mass.App.Ct. 541, 544 (2002) (citing Urban Inv. & Dev. Co. v. Turner Constr. Co., 35 Mass.App.Ct. 100, 107 (1993)).

The Agreement for Indemnity at issue provides in relevant part that NAS "shall be entitled to charges for any and all disbursements <u>made by it in good faith</u> . . . <u>whether or not such liability, necessity or expediency existed</u>; and that the vouchers or other evidence of any such payments made by [NAS] shall be prima facie evidence of the fact and amount of the

4

liability to [NAS]." Docket # 16-1 at 1 (emphasis added). NAS's employee affiant's recitation that his description of the claims made under the bonds is based upon his personal review of the relevant records is sufficient under the plain language of the agreement to constitute admissible evidence of the Defendants' liability. Under the unambiguous terms of the Agreement for Indemnity, NAS is entitled to reimbursement so long as it made the disbursements in good faith. Docket # 16-1 at 1. Merely establishing that Defendants had a basis to dispute the bills, which is the most defendants' factual submission establishes, does not create a genuine issue of material fact regarding NAS' good faith.

Lack of good faith refers to a knowing and conscious wrongdoing. Bank of America, N.A. v. Prestige Imports, 75 Mass.App.Ct. 741, 754 (2009) "It is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will." Id. (quoting Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 416 (1937)). Although the Defendants assert in conclusory fashion that there is a genuine dispute of material fact as to whether or not NAS acted in good faith, their denial of "good faith" in their Rule 56 statement is not sufficient to create a genuine dispute under Rule 56. The only competent evidence advanced by the Defendants is Federico's affidavit, which is devoid of probative evidence on the question of whether or not NAS acted in good faith. Docket # 18. See, e.g., Hartford Acc. and Indem. Co. v. Millis Roofing and Sheet Metal, Inc., 11 Mass.App.Ct. 998, 999 (1981) (nonmovant's affidavit expressing a belief or understanding that bonding company had not sufficiently investigated does not advance specific facts such as would be admissible under Rule 56). Mr. Federico does not even go so far as to allege bad faith generally in his affidavit.

5

This position (which would be insufficient to resist summary judgment even if properly affirmed) has been taken only in the Defendants' briefing. There is no genuine dispute as to whether or not NAS has acted in good faith.

III. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment of the Plaintiff, North American Specialty Insurance Company (Docket # 13) is ALLOWED.

SO ORDERED.

    /s / Leo T. Sorokin
UNITED STATES MAGISTRATE JUDGE